OPINION
{¶ 1} Defendant-appellant Edward L. Vauls appeals his conviction and sentence for one count of possession of crack cocaine in an amount less than one gram, a violation of R.C. § 2925.11(A). On December 29, 2005, Vauls was indicted for one count of possession of crack cocaine in an amount less than one gram. Vauls was arraigned on January 31, 2006, and chose *Page 2 
to stand mute during the proceedings. Thus, a plea of not guilty was entered to the charges contained in the indictment.
 {¶ 2} On March 3, 2006, Vauls filed a motion to suppress. A hearing on said motion was held on March 16, 2006. On March 20, 2006, the trial court issued a written decision overruling Vauls' motion to suppress.
 {¶ 3} Pursuant to negotiations with the State, Vauls entered a no contest plea to one count of possession of crack cocaine in an amount less than one gram on July 24, 2006. On August 21, 2006, the trial court found Vauls guilty and sentenced him to five (5) years of community control and suspended his driver's license for six (6) months. Vauls filed a timely notice of appeal with this Court on September 14, 2006.
 I {¶ 4} On November 4, 2005, Officers Jason Barnes and Patrick Bell of the Dayton Police Department were patrolling Hollencamp Avenue in the Crown Point area of Dayton, Ohio, at approximately 10:30 p.m. Officers Barnes and Bell were both members of the Specialized Enforcement Team (SET) and were patrolling the area pursuant to citizen complaints of drug dealing and other illegal activity.
 {¶ 5} While on patrol in an unmarked police vehicle, the officers observed what they believed to be a drug transaction in progress taking place in front of a residence located at 67 Hollencamp Avenue. Specifically, the officers observed a male leaning into the passenger side of a white Chrysler van speaking to the male driver of the vehicle. The officers parked their vehicle approximately one hundred (100) feet away in order to observe the suspected drug deal.
 {¶ 6} After a short time had passed, the officers observed the male leaning on the van *Page 3 
run back into the residence at 67 Hollencamp Avenue. He exited the house approximately one minute later and got into the passenger seat of the van. At this point, the driver of the van made a u-turn in front of the house. After the u-turn was complete, the driver stopped the vehicle, and the man in the passenger seat exited the vehicle and went back in the house.
 {¶ 7} Officers Barnes and Bell then followed the van as it drove away. After traveling several blocks, the officers effectuated a stop of the van. As the officer exited their unmarked cruiser and approached the van, they observed the driver of the vehicle make a throwing motion outside the open driver's side window. The officers removed the driver, later identified as Vauls, from the vehicle and patted him down. Once Vauls had been properly searched and detained, Officer Barnes searched the area where he believed Vauls had thrown something. Officer Barnes discovered a small white rock of what was later identified as crack cocaine a few feet away from the driver's side door.
 {¶ 8} Vauls was then placed under arrest and read his Miranda rights. After a brief questioning by the officers, Vauls admitted that he bought the crack cocaine from the male at 67 Hollencamp Avenue and threw it out of the driver's side window when the police pulled him over.
 {¶ 9} As previously mentioned, Vauls initially stood mute, thereby pleading not guilty to possession of crack cocaine, but he ultimately pled no contest to the charge after the trial court overruled his motion to suppress. The trial court found Vauls guilty of possession of crack cocaine and sentenced him accordingly.
 {¶ 10} It is from this judgment that Vauls now appeals. II *Page 4 
 {¶ 11} Vauls' sole assignment of error is as follows:
 {¶ 12} "THE TRIAL COURT FAILED TO SUPPRESS EVIDENCE RECOVERED AFTER POLICE OFFICERS ILLEGALLY STOPPED A VEHICLE BECAUSE THEY WERE UNABLE TO POINT TO SPECIFIC ARTICULABLE FACTS THAT WOULD GIVE RISE TO A REASONABLE INFERENCE THAT CRIMINAL ACTIVITY HAD OCCURRED."
 {¶ 13} In his only assignment, Vauls contends that the trial court erred when it overruled his motion to suppress because Officers Barnes and Bell did not possess a reasonable, articulable basis upon which to stop the vehicle Vauls was operating. Based on the totality of the circumstances, we disagree with Vauls and affirm the ruling of the trial court.
 {¶ 14} With respect to a motion to suppress, "the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and evaluate the credibility of witnesses." State v.Hopfer (1996), 112 Ohio App.3d 521, 548, 679 N.E.2d 321, quoting Statev. Venham (1994), 96 Ohio App.3d 649, 653, 645 N.E.2d 831. The court of appeals must accept the trial court's findings of fact if they are supported by competent, credible evidence in the record. State v.Isaac (July 15, 2005), Montgomery App. No. 20662, 2005-Ohio-3733, citingState v. Retherford (1994), 93 Ohio App.3d 586, 639 N.E.2d 498. Accepting those facts as true, the appellate court must then independently determine, as a matter of law and without deference to the trial court's legal conclusion, whether the applicable legal standard is satisfied. Id. In the instant case, both parties agree that the central issue to be reviewed de novo is whether the officers possessed a reasonable, articulable basis to stop Vauls' van after observing what they believed to be an illegal drug transaction.
 {¶ 15} We summarized the standard for determining the lawfulness of an investigatory *Page 5 
stop in State v. Alsup (Jan. 31, 1997), Montgomery App. No. 15483, as follows:
 {¶ 16} "When a law enforcement officer has a reasonable and articulable suspicion that criminal activity is afoot, he may briefly detain a person whom he suspects of involvement in such activity in order to investigate those suspicions."
 {¶ 17} "Reasonableness" is measured in objective terms by examining the totality of the circumstances. State v. Robinette,80 Ohio St.3d 234, 685 N.E.2d 762, 1997-Ohio-343. The totality of the circumstances are "* * * to be viewed from the eyes of the reasonable and prudent police officer on the scene who must react to the events as they unfold."State v. Andrews (1991), 57 Ohio St.3d 86, 87-88, 565 N.E.2d 1271, citing from U.S. v. Hall (C.A.D.C. 1976), 525 F.2d. 857, 859; State v.Freeman (1980), 64 Ohio St.2d 291, 414 N.E.2d 1044.
 {¶ 18} Further, "a court reviewing the officer's actions must give due weight to his experience and training and view evidence as it would be understood by those in law enforcement." State v. Andrews, supra. "Courts ordinarily give substantial deference to the officer's judgments and decline to second guess the person on the scene. Nevertheless, in resisting a motion to suppress[,] the state has the legal burden to show that the officer acted on more than an `inchoate hunch,' an intuitive feeling grounded only upon fragmentary indications of crime. It must show that the course was one which a reasonable officer, on alert to his or her duty to prevent crime but mindful of Fourth Amendment constraints, would follow under the circumstances." State v. Hill (Nov. 24, 1993), Montgomery App. No. 13959.
 {¶ 19} We held in State v. Mills (Aug. 28, 1998), Montgomery App. No. 16898, that "in addition to the arresting officer's training and experience, other facts that may be considered by a court in determining whether the officer's suspicion of criminal behavior was reasonable *Page 6 
include: the arresting officer's familiarity with how drug transactions occur, State v. Bobo (1988), 37 Ohio St.3d 177, 524 N.E.2d 489; the reputation of the area for criminal activity, U.S. v. Magda (C.A.2, 1976), 547 F.2d 756, cert. denied (1977), 434 U.S. 878, 98 S.Ct. 230; the time of day which the alleged activity took place, State v.Andrews, supra."
 {¶ 20} In the instant case, the following objective factors support Officers Barnes' and Bell's belief that Vauls had been involved in a drug transaction with the supposed resident at 67 Hollencamp Avenue: 1) Barnes is a four year veteran police officer assigned to the Specialized Enforcement Team whose duty is to patrol high crime areas where a great deal of illegal drug activity occurs; 2) Barnes testified that the Crown Point area where they stopped Vauls is a high crime area where he has previously made numerous arrests for crack cocaine. Further, Barnes testified that there were citizen complaints of drug activity on Hollencamp, including the residence where Vauls was initially observed; 3) Barnes testified that his observation of someone leaning into a parked vehicle, then leaving to enter a residence only to return a short time later and enter the vehicle, and then getting out of the vehicle quickly to return to the residence was consistent with drug transactions which he had personally observed in the past; and 4) the incident occurred at approximately 10:30 p.m.
 {¶ 21} Considering the totality of the circumstances, giving due weight to the training and experience of Officer Barnes, and viewing the evidence through the eyes of a reasonable and prudent police officer on the scene who must react to events as they unfold, we find that Officers Barnes and Bell acted on more than an "inchoate hunch." The decision to stop Vauls was based on specific and articulable objective facts which, when taken together with the rational inferences from those facts, led to a reasonable suspicion that Vauls was engaged in *Page 7 
illegal drug activity. Thus, the officers had the necessary reasonable and articulable suspicion to stop Vauls.
 {¶ 22} Vauls' sole assignment of error is overruled.
 III {¶ 23} Vauls' sole assignment of error having been overruled, the judgment of the trial court is affirmed.
WOLFF, P.J. and GRADY, J., concurs.
(Hon. George M. Glasser retired from the Sixth District Court of Appeals sitting by assignment of the Chief Justice of the Supreme Court of Ohio). *Page 1